**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Suzanne Williams,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-21-01192-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Patricia Suzanne Williams's appeal from the Commissioner of the Social Security Administration's denial of social security disability benefits. The appeal is fully briefed, (Doc. 17 and Doc. 20), and the Court now rules.

**I.    BACKGROUND**

   **A. Factual Overview**

Plaintiff was in her late 50s as of her alleged disability onset. (AR 66). She has a high school education and past relevant work experience as a customer service representative and reservation clerk. (AR 68). Plaintiff filed her social security disability claim on November 13, 2014, alleging disabilities beginning on August 13, 2014, including arthritis, bilateral carpal tunnel, hand joint pain, neuropathy, degeneration of intervertebral disc, viral hepatis C, chronic hepatitis C, gastroesophageal reflux disease, and anxiety. (AR 341, 406).

An ALJ denied Plaintiff's claim on February 27, 2018. (AR 158–73). The Appeals Council vacated the ALJ decision and remanded it back to a different ALJ. (AR 180–81).

The ALJ again denied Plaintiff's claim on August 31, 2020. (AR 14–32).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

**C. The ALJ's Application of the Factors**

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 13, 2014, the alleged onset date. (AR 17). At the second step, the ALJ concluded Plaintiff had severe impairments of cervical and lumbar spondylosis, thoracic degenerative disc disease, bilateral carpal tunnel syndrome, status post bilateral release, lateral epicondylitis, osteoarthritis of the bilateral hands, degenerative joint disease of the right knee and right hip, osteoarthritis of the right foot, status post chielectomy of the first metaphalageal joint, and obesity. (AR 17).

At the third step, the ALJ determined that Plaintiff's impairments did not meet or equal the criteria in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (AR 22). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform sedentary work as defined in 20 C.F.R. 404.1567(b). (AR 23).

At the fourth step, the ALJ determined that Plaintiff could perform her past relevant work as a customer service representative and reservation clerk. (AR 31). Accordingly, the ALJ concluded that Plaintiff has not been under a disability since the alleged onset date.

**II. LEGAL STANDARD**

This Court may not overturn the ALJ's denial of disability benefits absent legal

error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.   DISCUSSION

Plaintiff argues that the ALJ erred for two reasons. First, Plaintiff argues that the ALJ erred by failing to evaluate the opinion evidence consistent with agency policy. (Doc. 17 at 14). Second, Plaintiff argues that the ALJ's step four finding was contrary to law because she included no mental limitations in the RFC finding. (Doc. 17 at 22). The Court addresses each in turn.

### A. Medical Opinions

Plaintiff first argues the ALJ erred by assigning little weight to the opinion of Dr. Nieman. (Doc. 17 at 15). Dr. Nieman concluded that Plaintiff would need frequent breaks in her work and hat prolonged typing would aggravate her arthritis. (AR 1654). The ALJ addressed Dr. Nieman's opinion as follows:

> Theresa Nieuman [sic], M.D., the claimant's treating rheumatologist opined that the claimant would have limitations typing for extended periods several days a week due to pain. Further, it was opined that the claimant would

- 4 -

>require frequent breaks and less typing, and that she would benefit from a dictation program (Exhibit 8F). Dr. Nieman, MD also completed forms in March 2018 indicating the claimant's rheumatoid-like arthritis involved multiple joints and caused episodes of increasing severity of inflammation two to three times per week lasting up to two hours (Exhibit 9F, p. 2). She noted that repetitive motions of typing for more than two hours without a break caused increased pain, and her symptoms were manageable for four hours a day for a total of 12 hours a week (Exhibit 9F, p. 2). Dr. Nieman opined the claimant's impairment began in 2013 (Exhibit 9F, p. 3). The undersigned affords these opinions little weight. Although the record does demonstrate that the claimant is unable to constantly perform fine and gross manipulation, Dr. Nieuman's [sic] opinion is of little probative value in assessing the claimant's specific functional limitations. Additionally, the evidence of record fails to demonstrate that the claimant requires frequent breaks. As noted above, the recent electrodiagnostic testing has indicated minimal carpal tunnel findings, as further discussed above. Records typically indicate full motor strength, and improvement in symptoms with treatment. However, a limitation to frequent manipulative activities is supported by and consistent with the overall record. In addition, the undersigned notes that the earlier report is vague with regard to frequency of breaks and parameters of "less typing," and the 2018 opinion addresses conditions of past work that required constant typing per the claimant's report.

(AR 29).

Plaintiff also argues that the ALJ erred in assigning limited weight to the opinion of Dr. Arpino. Dr. Arpino examined Plaintiff and concluded that Plaintiff would need accommodations because of her limitations and would likely be off task more than 25% of the workday. (AR 2299–2302). The ALJ addressed Dr. Arpino's opinion as follows:

>Girolamo Arpino, DO completed a form dated May 2020 indicating he had treated the claimant since July 2019 (Exhibit 19F, pp. 6-9). He indicated diagnoses of chronic kidney disease, diabetes mellitus, osteoarthritis, bilateral carpal tunnel syndrome, degenerative disc disease, fibromyalgia, hyperlipidemia, anxiety, depression, and neuropathy (Exhibit 19F, p. 6). He opined the claimant would be off tasks for more than 25 percent of the workday, she could maintain attention and concentration for less than five minutes, and she would likely be absent from work four or more days per month (Exhibit 19F, p. 6). He also opined that the claimant could only rarely lift and carry less than 10 pounds, sit four hours and stand or walk less than one hour in an eight hour workday, she would need to lie down for three to four hours a day in an eight hour workday and would need to lie

- 5 -

>down or recline for one hour (Exhibit 19F, p. 7). She did not require an assistive device (Exhibit 19F, p. 7). She could occasionally finger and feel and rarely reach and push, p. pull and use foot controls (Exhibit 19F, p. 8). She could rarely or never perform postural activities and could tolerate only occasional exposure to humidity and wetness, pulmonary irritants, extreme temperature, and vibrations; rarely exposure to operating a vehicle; and no exposure to unprotected heights or moving mechanical parts (Exhibit 19F, p. 9). The undersigned gives this opinion limited weight also. Although Dr. Arpino lists diagnoses in support these limits, he failed to explain these debilitating limitations beyond notations of pain and neuropathy in several parts of the body. The undersigned finds that electrodiagnostic studies discussed above, do not support such extreme limitation in functioning.

(AR 30).

The weight that a particular opinion is afforded is based on who is giving that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Id.*; *see* 20 C.F.R. 404.1527(c)(1)–(2). But a treating physician's opinion is not necessarily conclusive. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). If a treating physician's opinion is contradicted by another physician's opinion, an ALJ may reject it "by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

Here, the ALJ provided sufficiently specific and legitimate reasons for discounting the providers' opinions, and Plaintiff's arguments to the contrary are unpersuasive. Plaintiff first argues that the ALJ failed to properly consider the treating relationship of Dr. Nieman and Dr. Arpino in determining the weight of their opinions. (Doc. 17 at 16). But the ALJ acknowledged the treating relationship and still found that their opinions were inconsistent with the record. Specifically, the ALJ highlighted Plaintiff's record which typically indicated normal results "improvement in symptoms with treatment." (AR 29). An ALJ may properly discredit a treating physician's opinion when it is "unsupported by the record as a whole." *See Batson v. Comm'r of SSA*, 359 F.3d 1190,

1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective medical findings"). The ALJ did not err by discussing the "opinions in isolation from each other" because the ALJ explained how the opinions were inconsistent with the objective medical evidence. (Doc. 17 at 17).

Next, Plaintiff argues that the ALJ's assessment of Dr. Nieman and Dr. Arpino's opinions are deficient for several reasons. Plaintiff first addresses the "ALJ's electrodiagnostic testing rational." (Doc. 17 at 18). In addressing Dr. Nieman's opinion, the ALJ wrote: "As noted above, the recent electrodiagnostic testing has indicated minimal carpal tunnel findings, as further discussed above." (AR 29). Plaintiff claims that the ALJ erred because Dr. Nieman never "assessed manipulative limitations" based on Plaintiff's carpal tunnel. (Doc. 17 at 18). The Court does not read the ALJ's statement to mean that Dr. Nieman was opining on Plaintiff's carpal tunnel. Rather, the ALJ—when assessing limitations on Plaintiff's hands—was noting that testing results were coming back inconsistent with the limitations that Dr. Nieman assessed. (AR 29). Moreover, the ALJ noted that Dr. Nieman's opinion regarding "a limitation to frequent manipulative activities is supported." (AR 29). This indicates that the ALJ considered Dr. Nieman's opinion on Plaintiff's arthritis.

Plaintiff further argues that Dr. Nieman and Dr. Arpino's opinions regarding motor strength are consistent with the record. (Doc. 17 at 19–20). Specifically, Plaintiff notes that Plaintiff consistently had swelling, numbness, and decreased range of motion in her hands, fingers, and wrists. (Doc. 17 at 19). The record indicates, however, that Plaintiff consistently reported normal motor strength. (AR 29). Additionally, the ALJ considered Plaintiff's treatment history and her positive response to it. (AR 29). The ALJ found that surgery, physical therapy, and injections improved her hands. (AR 29); *Garrison*, 759 F.3d at 1012 (finding that an ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").

Moreover, Plaintiff argues the ALJ's comments discounting Dr. Nieman's opinion regarding the frequent breaks and constant typing were in error. (Doc. 17 at 20). This argument is also unpersuasive. The ALJ properly noted that Dr. Nieman's limitation on typing had little probative value because the record did not support this finding. (AR 29). The ALJ noted that recent evidence in the record demonstrated improvement in hand use which supported greater typing ability. (AR 30). The ALJ similarly found that Dr. Nieman's opinion regarding frequent breaks was not well-supported. (AR 29). The ALJ thus discounted Dr. Nieman's opinion because the ALJ found it unsupported. The ALJ did not err in doing so. *See Batson*, 359 F.3d at 1195.

Plaintiff next argues that the ALJ erred in determining that Dr. Arpino did not explain his opinion and should have reached out to Dr. Arpino if the ALJ had questions about assessed limitations. (Doc. 17 at 21). Plaintiff later argues that the ALJ should also have reached out to Dr. Nieman for further clarification. (Doc. 17 at 22).

An ALJ has an independent "duty to fully and fairly develop the record and assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citation and quotations omitted). But an ALJ only has a duty to develop "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Ford*, 950 F.3d at 1156 (citations omitted).

Here, the record is neither ambiguous nor inadequate to allow for proper evaluation of the evidence. The ALJ considered the opinions of Dr. Arpino and Dr. Nieman, finding them inconsistent with the objective medical evidence. Plaintiff has failed to point to any ambiguous or inadequate area of the record which would require the ALJ to further develop the record and recontact Dr. Arpino and Dr. Nieman. Thus, the ALJ had no further obligation to contact Dr. Arpino or Dr. Nieman. *Tonapetyan*, 242 F.3d at 1150.

Conversely, the ALJ afforded "some weight" to state agency medical consultant Martha Goodrich, M.D. Plaintiff argues that the ALJ erred in relying on the nonexamining reviewer because the reviewer "did not have access to the opinions of Drs.

Nieman and Arpino." (Doc. 17 at 21). An ALJ may properly rely on the "opinions of non-treating or non-examining physicians" when the "opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Here, the ALJ considered Dr. Goodrich's opinion, finding that it was "generally consistent" with the record. (AR 28). Specifically, Dr. Goodrich's opinion found that Plaintiff is "limited to performing a reduced range of work activity with only frequent handling and fingering." (AR 28). The ALJ did, however, impose more restrictions than what Dr. Goodrich recommended based on MRI findings and subjective body pain complaints. (AR 29). The ALJ did not err when finding that Dr. Goodrich's opinion was more consistent with the record. In sum, the ALJ properly considered the medical opinions of Dr. Nieman and Dr. Arpino.

**B. RFC Determination**

Plaintiff also argues that the ALJ erred in the RFC finding because the ALJ did not include any mental limitations. (Doc. 17 at 22).

When evaluating mental impairment severity, the ALJ must follow a two-step procedure. *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The first step requires evaluating a claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [claimant has] a medically determinable mental impairment[]." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ must also "specify the symptoms, signs, and laboratory findings that substantiate the presence of [each determined] impairment and document [the] findings . . . ." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

The second step requires the ALJ to rate "the degree of functional limitation resulting from [claimant's] impairment." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The ALJ rates "the degree of functional limitation resulting from the impairment" of the Plaintiff in four broad areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520(a)(c)(3). Plaintiff's degree of functional limitation is based on the extent to which her impairment interferes with her

ability "to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 404.1520(a)(c)(2). The rating system is based on a five-point scale: "None, mild, moderate, marked, and extreme." *Id.* The ALJ then determines the severity of the mental impairment. *See* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the ALJ finds the degrees of limitation are "none" or "mild," she will generally conclude the Plaintiff's impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520(a)(d)(2).

The ALJ must incorporate relevant findings and conclusions based on the above procedure in her written decision. *Id.* § 404.1520(a)(e)(4). The ALJ's written decision must "include the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* Additionally, the written decision must include a specific finding regarding the degree of limitation in each of the four functional areas described above. *Id.*

Here, the ALJ found that Plaintiff had mild limitations in all four assessed areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (AR 18–20). The ALJ then determined Plaintiff's RFC "to perform sedentary work." (AR 23).

Plaintiff argues that the ALJ erred because the ALJ did not include any mental limitations in the RFC finding. (Doc. 17 at 22). Specifically, Plaintiff claims that mild limitations have at least some effects on the ability to work and the ALJ's findings of mental limitations meant they needed to be included in the RFC. (Doc. 17 at 25).

When assessing the RFC, the ALJ is required to consider all the "medically determinable impairments that are not 'severe'. . . ." 20 C.F.R. § 404.1545(a)(2). But while these regulations require the ALJ to consider the effect of all plaintiff's impairments in formulating the RFC, they do not require him to translate every non-severe impairment into a functional limitation in the RFC. Rather, the ALJ only must "consider" non-severe impairments when determining the RFC. § 404.1545(a)(2). The

ALJ did that here when she said the RFC "assessment reflects the degree of limitation" found in the "mental function analysis." (AR 21). *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228–29 (9th Cir. 2009) (holding that the ALJ did not fail to account for the plaintiff's mental disorder where plaintiff's mental impairment did not correspond to limitations on plaintiff's ability to perform basic work activities).

Plaintiff further argues that the ALJ committed harmful error in determining that Plaintiff's mental impairments caused no more than minimal limitations. (Doc. 17 at 23). Specifically, the ALJ was wrong to conclude that Plaintiff's mental impairments were mild. (Doc. 17 at 23).

Notably, Plaintiff never explains what limitation should have been graded more severe. (Doc. 17 at 23). Plaintiff does, however, have a long history of anxiety which could be the mental impairment Plaintiff believes to be more than a mild impairment. (Doc. 17 at 11). But the ALJ addressed Plaintiff's mental limitations—including anxiety—and found that Plaintiff's limitations were mild. The ALJ considered psychological evaluations, mental status examinations, and Plaintiff's comments to conclude that Plaintiff's limitations were mild. (AR 19–20). For example, the ALJ noted that Plaintiff "was working and caring for her parents," and she "wanted to avoid psychiatric medicine" which indicated a mild limitation in understanding, remembering, or applying information. (AR 19). Likewise, the ALJ concluded that Plaintiff had a mild limitation interacting with others, referencing Plaintiff's ability to work at Best Western and a mental status examination which "demonstrated a stable mood with a positive affect, [sic] adequate motivation, and adequate insight and judgment." (AR 19). The ALJ found similar results regarding Plaintiff's ability to concentrate and Plaintiff's ability to adapt or manage herself. (AR 19–20). Therefore, contrary to Plaintiff's assertion, the ALJ was not obligated to specifically discuss the mild limitations in the RFC. *See Schalik v. Berryhill*, No. 16-CV-2059 W (KSC), 2017 WL 4272325 at *6 (S.D. Cal. 2017) (finding that the ALJ did not need to include moderate limitations in RFC where they did not affect determination).

The ALJ provided substantial evidence in accordance with the statutory analysis outlined in 20 C.F.R. § 404.1520(a). *See Benear v. Saul*, 838 Fed. App'x 305, 306 (9th Cir. 2021); *Bayliss*, 427 F.3d at 1217. Accordingly, the Court finds that the ALJ did not err in evaluating Plaintiff's mental impairments.

## IV.     CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**, and the Clerk of the Court shall enter judgment accordingly.

Dated this 12th day of July, 2022.

James A. Teilborg
Senior United States District Judge